John J. Bowers
Paul W. Kisslinger
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMISSION
100 F Street, N.E.
Washington, DC 20549
(202) 551-4645 (Bowers)
(202) 551-4427 (Kisslinger)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
| : | |
| Plaintiff, : | 18-CV-6984 |
| : | |
| -against- : | COMPLAINT |
| : | |
| ROGER DUFFIELD and : | JURY TRIAL DEMANDED |
| PLANDAI BIOTECHNOLOGY, INC., : | |
| : | |
| Defendants. : | |
| : | |

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC"), for its

Complaint against defendants Roger Duffield ("Duffield") and Plandai Biotechnology, Inc.

("Plandai") (collectively, "Defendants"), alleges as follows:

**SUMMARY**

1.      This matter concerns violations of the federal securities laws by Plandai, a penny

stock company that purports to have developed a technology to extract live plant material for use

in the health and wellness industry, and Duffield, Plandai's President and Chief Executive

Officer.

2.      In particular, from November 2013 through August 2014, Duffield and Plandai

made unregistered offerings and sales of 548,100 shares of Plandai common stock to three

investors, two of which were unaccredited and unsophisticated investors.

3.      In addition, although these shares were newly issued and sold directly by Plandai to the investors at Duffield's direction, Duffield instructed the investors to wire their payments to CRS Technologies, Inc. ("CRS Technologies"), a private company owned and controlled by Duffield, rather than to Plandai.

4.      Plandai's annual report on Form 10-K for the fiscal year ending June 30, 2014 falsely stated, however, that Plandai, and not CRS Technologies, had received cash in exchange for these shares.  In addition, the annual report omitted the material fact that the investor payments were diverted to CRS Technologies.

5.      In addition, Plandai did not accurately and fairly account for these transactions in its books and records.  Plandai's failure to properly record these transactions resulted from its lack of an adequate system of internal accounting controls.

6.      As a result of the conduct alleged in this Complaint, Plandai violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)], Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)], and Exchange Act Rules 12b-20 and 13a-1 [17 C.F.R. §§ 240.12b-20, 240.13a-1].

7.      In addition, as a result of the conduct alleged in this Complaint, Duffield violated Sections 5(a) and 5(c) of the Securities Act and aided and abetted Plandai's violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Exchange Act Rules 12b-20 and 13a-1.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Securities Act Sections 20(b), 20(d), and 22(a) [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Exchange Act Sections

21(d), 21(e), and 27 [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

9.     Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

10.     Venue lies in the Southern District of New York under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa] because certain of the offers and sales of securities and certain of the transactions, acts, practices and courses of conduct constituting the violations alleged in this Complaint occurred within this District.  At all relevant times, Plandai common stock traded on OTC Link, the interdealer quotation system operated by OTC Markets Group, Inc., which is headquartered in Manhattan.

## DEFENDANTS

11.     **Roger Duffield**, age 75, is a British citizen currently residing in South Africa. Duffield is the President and Chief Executive Officer of Plandai.  He also owns and controls CRS Technologies, a company that claims to specialize in research related to the development of botanical extracts.

12.     **Plandai Biotechnology, Inc**. is a Nevada corporation with its principal executive offices currently located in London, England.  Plandai claims to be in the business of producing botanical extracts from live plant material, including from green tea leaves, tomatoes, and more recently, marijuana, for the nutriceutical and pharmaceutical industries.  Plandai purportedly grows much of the live plant material used in its products on a 7,400 acre estate in South Africa. At all relevant times, Plandai's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act and was quoted on OTC Link under the ticker symbol

"PLPL." Plandai filed periodic reports with the Commission pursuant to Section 13(a) of the Exchange Act and related rules thereunder, including Forms 10-K and 10-Q. On January 31, 2017, Plandai filed a Form 15 with the Commission deregistering securities it had registered pursuant to Section 12(g) of the Exchange Act. At all times relevant to this Complaint, Plandai common stock was a "penny stock," as defined by the Exchange Act – it traded at less than $5.00 per share, and did not meet any of the exceptions to penny stock classification pursuant to Section 3a51-1 of the Exchange Act.

## OTHER RELEVANT ENTITIES

13.      **CRS Technologies, Inc.** is a Delaware corporation owned and controlled by Duffield. CRS Technologies received investor payments from certain of the transactions, as described below.

## FACTS

A.      **Unregistered Offer and Sale of Plandai Stock**

14.      Pursuant to Section 5 of the Securities Act, it is unlawful for any person, directly or indirectly, to offer or sell securities using the United States mails or interstate commerce, unless (1) the offer or sale is registered with the SEC pursuant to a valid registration statement that applies to that specific offering of stock; or (2) the offer or sale is exempt from the registration requirements of Section 5.

15.      Beginning on or about November 2013, via emails, telephone conversations and in-person meetings, Duffield and Plandai directly offered to sell and sold Plandai common stock in unregistered transactions to three investors, at least two of whom were unsophisticated and unaccredited. The sales were made pursuant to stock purchase agreements between the investors and Plandai.

16.     The offers and sales to the unaccredited and unsophisticated investors were not

exempt from the registration requirements of Section 5.

17.     Duffield and Plandai utilized the means of interstate commerce in connection with

these unregistered offers and sales of securities by communicating with the investors, who were

located in the United States, by email and telephone and by accepting money via wire transfers.

18.     In November 2013, Duffield and Plandai offered to sell Plandai securities to

Investor A, a Wisconsin resident who was the mother of a Plandai employee.  Following a series

of emails and phone calls with Duffield, Investor A agreed to purchase 20,000 shares of Plandai

stock in an unregistered private transaction, at a total cost of $10,000.  At Duffield's direction, on

December 9, 2013, Investor A wired $10,000 to a bank account owned by CRS Technologies

and controlled by Duffield.  Duffield and CRS Technologies did not forward this payment to

Plandai.

19.     At all relevant times, Investor A was an unaccredited and unsophisticated

investor.  Her net worth, when combined with that of her spouse, was less than $1,000,000, and

her joint annual income with her spouse was less than $300,000.  Duffield never asked Investor

A about her income or net worth, and he never requested or received any documents regarding

her finances.  Neither Duffield nor Plandai had a reasonable basis to believe that Investor A was

an accredited investor.

20.     Neither Duffield nor Plandai ever provided Investor A with any financial

information about Plandai, such as an audited balance sheet, Plandai's most recent Form 10-K,

or a written description of the securities being offered.

21.     None of the securities offered or sold to Investor A were offered or sold pursuant

to a registration statement filed with the Commission or a valid exemption, as required by the

securities laws.

22.     Duffield and Plandai also offered to sell Plandai stock to Investors B and C,
brothers who were neighbors of a Plandai employee in the Seattle area.  Pursuant to a series of
emails, telephone calls and in-person meetings between November 2013 and August 2014,
Investors B and C purchased a total of 528,100 shares of Plandai stock, at a total cost of
$115,000, pursuant to a series of stock purchase agreements with Plandai.

23.     Investor B agreed to purchase 86,800 shares of Plandai stock for $40,000, and he
made the following payments at Duffield's direction:

> a.  On November 27, 2013, Investor B wired $10,000 to a CRS Technologies
> bank account controlled by Duffield;
>
> b.  On December 20, 2013, Investor B sent a $12,000 cashier's check to CRS
> Technologies that was deposited into a CRS Technologies bank account
> controlled by Duffield;
>
> c.  On January 29, 2014, Investor B sent a $16,400 cashier's check to CRS
> Technologies that was deposited into a CRS Technologies bank account
> controlled by Duffield; and
>
> d.  On January 31, 2014, Investor B paid $1,600 in cash to a third party.

After Investor B made these payments, Duffield and Plandai provided him with a written
agreement documenting the purchase, dated March 31, 2014 ("Agreement 1").

24.     Duffield subsequently solicited Investors B and C again, and they agreed to
purchase additional shares of Plandai stock.  On June 9, 2014, Investor B sent a $22,000
cashier's check to CRS Technologies that was deposited into a CRS Technologies bank account
controlled by Duffield.  After Investor B made this payment, Duffield and Plandai provided

written agreements to Investors B and C:  (1) a written agreement dated July 13, 2014, documenting the purchase of 55,000 shares by Investor B for $11,000 ("Agreement 2"); and (2) a written agreement, also dated July 13, 2014, documenting the purchase of 55,000 shares by Investor C for $11,000 ("Agreement 3").

25.     Investor B and Investor C subsequently were solicited by Duffield and agreed to purchase additional shares of Plandai stock.  On August 11, 2014, Investor C sent a $50,000 cashier's check to CRS Technologies that was deposited into a CRS Technologies bank account controlled by Duffield.  On August 12, 2014, Investor B sent a $3,000 cashier's check to CRS Technologies that was deposited into a CRS Technologies bank account controlled by Duffield. After these payments were made, Duffield and Plandai again provided written agreements to Investors B and C: (1) a written agreement dated August 28, 2014, documenting the purchase of 114,000 shares by Investor B for $18,236 ("Agreement 4"); and (2) a written agreement, also dated August 28, 2014, documenting the purchase of 217,300 shares by Investor C for $34,764 ("Agreement 5").

26.     Duffield and CRS Technologies did not forward any of the payments from Investors B and C to Plandai.

27.     When Investor B questioned why Duffield had directed him to pay CRS Technologies instead of Plandai for the stock, Duffield falsely stated that the shares were coming from a block of Plandai stock owned by CRS Technologies.  Duffield also subsequently told Investor B that additional shares of Plandai common stock would be coming from Duffield's own personal allotment, which again was false, as the shares purchased by Investors B and C were shares that had been newly issued by Plandai at Duffield's direction.

28.     At all relevant times, Investor B was an unaccredited and unsophisticated

7

investor, with a net worth of less than $1,000,000, and an annual income of less than $200,000.

Duffield never asked Investor B about his income or net worth, nor did he ever request or receive

any documents regarding Investor B's finances.  Neither Duffield nor Plandai had a reasonable

basis for believing that Investor B was an accredited investor.

29.     Neither Duffield nor Plandai ever provided Investor B with any financial

information about Plandai, such as an audited balance sheet, Plandai's most recent Form 10-K,

or a written description of the securities being offered.

30.     None of the securities offered or sold to Investor B were offered or sold pursuant

to a registration statement filed with the Commission or a valid exemption, as required by the

securities laws.

**B.      Plandai's Misleading Disclosure in Its Annual Report for the Fiscal Year Ending
         June 30, 2014**

31.     On October 14, 2014, Plandai filed its annual report on Form 10-K for the fiscal

year ending June 30, 2014.  Duffield signed the Form 10-K as the principal executive officer of

Plandai, certifying its accuracy and completeness.

32.     The annual report contained a summary of Plandai's unregistered securities

transactions during the fiscal year, including the following statement concerning the issuance of

86,800 Plandai shares to Investor B (described as Agreement 1 above): "86,800 shares of

restricted common stock were sold to unaffiliated third parties in exchange for cash proceeds of

$40,000."  This statement was misleading.  Although Investor B had purchased 86,800 shares of

Plandai stock for $40,000 during this time period, the funds in question – $38,400 sent to a CRS

Technologies bank account controlled by Duffield, and another $1,600 paid in cash to a third

party – were not received by Plandai.

33.     Plandai and Duffield failed to disclose the transaction with Investor A, described

8

in paragraph 18 above, in Plandai's annual report on Form 10-K for the fiscal year ending June 30, 2014.

34.    Plandai's misleading statement and omission in its Form 10-K for the fiscal year ending June 30, 2014, were material – a reasonable investor would want to know that Duffield, Plandai's Chief Executive Officer, diverted funds due and owing to Plandai to a private company that he controlled and to a third party.

**C.    Plandai's Improper Accounting of Money Received from Private Sales of Stock**

35.    As described above, at Duffield's direction, Investors A, B and C sent a total of $123,400 to CRS Technologies as consideration for Plandai stock, and Investor C paid an additional $1,600 in cash to a third party.  Although these investors sent the money to CRS Technologies and a third party, rather than to Plandai, Plandai and Duffield improperly and inaccurately recorded the transactions on Plandai's books as though Plandai had actually received the funds.

36.    Plandai's accounting failures described above stemmed from Plandai's failure to devise and maintain a reasonable system of internal accounting controls.  In particular, Plandai failed to establish sufficient internal accounting controls to provide reasonable assurance that transactions were recorded as necessary to permit preparation of financial statements in accordance with GAAP and to maintain accountability of assets.

**D.    Duffield Aided and Abetted Plandai's Disclosure, Accounting and Internal Control Violations**

37.    As described in detail above, Duffield and Plandai made unregistered offerings and sales of Plandai common stock to at least two unaccredited and unsophisticated investors.

38.    Duffield knowingly or recklessly made the unregistered offerings described above and facilitated and participated in transactions with Investors A, B and C in which they

9

purchased shares of Plandai stock based on unregistered offerings.

39.     Duffield also knowingly or recklessly directed Investors A, B and C to send payment for the above-described purchases of Plandai shares to CRS Technologies rather than Plandai, and directed Investor B to pay $1,600 in cash to a third party in connection with one of these purchases.

40.     As discussed above, Plandai's Form 10-K for the fiscal year ending June 30, 2014, filed on October 14, 2014, contained a materially misleading statement concerning the issuance of Plandai shares to Investor B:  "86,800 shares of restricted common stock were sold to unaffiliated third parties in exchange for cash proceeds of $40,000."  Duffield signed the Form 10-K in his capacity as the principal executive officer of Plandai, certifying its accuracy and completeness, despite his knowledge that the funds in question – $38,400 sent to a CRS Technologies bank account controlled by Duffield, and another $1,600 paid in cash to a third party – were not received by Plandai.

41.     Despite his personal knowledge of, and involvement in, the above-described unregistered offerings and sales of Plandai shares, Duffield knowingly or recklessly failed to ensure that these transactions received the proper accounting treatment.

42.     In addition, Duffield was the individual responsible for devising and maintaining Plandai's system of internal accounting controls.  Duffield was therefore responsible for Plandai's failure to devise and maintain a reasonable system of internal accounting controls.

## FIRST CLAIM FOR RELIEF
### Violations of Sections 5(a) and (c) of the Securities Act

### (Against Plandai and Duffield)

43.     Paragraphs 1-2, 6-30 and 37-42 are re-alleged and incorporated by reference as if fully set forth herein.

44.     By engaging in the conduct described above, Defendants singly or in concert, directly or indirectly:  (a) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell shares of Plandai common stock through the use or medium of a prospectus or otherwise; (b) carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, shares of Plandai common stock for the purpose of sale or delivery after sale; and/or (c) made use of a means or instrument of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy shares of Plandai common stock through the use or medium of a prospectus or otherwise. No valid registration statement was filed or in effect with the Commission pursuant to the Securities Act respect to the transactions that resulted in the issuance of such shares of Plandai common stock and no exemption from registration was available.

45.     By reason of the foregoing, Defendants violated, and unless enjoined will again violate, Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 78e(a) and 78e(c)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder

### (Against Plandai)

46.     Paragraphs 1-36, 39-41 are re-alleged and incorporated by reference as if fully set forth herein.

47.     Defendant Plandai, by engaging in the conduct described above, failed to file factually accurate and complete periodic reports with the Commission concerning the payments it received for the issuance and sale of Plandai stock to Investors A, B, and C.

48.     By reason of the foregoing, Defendant Plandai violated, and unless enjoined will again violate, Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

## THIRD CLAIM FOR RELIEF
### Violations of Sections 13(b)(2)(A) and (B) of the Exchange Act

### (Against Plandai)

49.     Paragraphs 1-36, 39-42 are re-alleged and incorporated by reference as if fully set forth herein.

50.     Section 13(b)(2)(A) of the Exchange Act requires issuers having a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that are required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

51.     Section 13(b)(2)(B) of the Exchange Act requires issuers having a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that are required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], to

devise and maintain a system of internal accounting controls sufficient to provide reasonable

assurances that (i) transactions are executed in accordance with management's general or

specific authorization; (ii) transactions are recorded as necessary (I) to permit preparation of

financial statements in conformity with generally accepted accounting principles or any other

criteria applicable to such statements, and (II) to maintain accountability for assets; (iii) access to

assets is permitted only in accordance with management's general or specific authorization; and

(iv) the recorded accountability for assets is compared with the existing assets at reasonable

intervals and appropriate action is taken with respect to any differences.

52.     By reason of the foregoing, Defendant Plandai violated, and unless enjoined will

again violate, Exchange Act Sections 13(b)(2)(A) and (B) [15 U.S.C. §§ 78m(b)(2)(A) and (B)].

## FOURTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20 and 13a-1 thereunder

### (Against Duffield)

53.     Paragraphs 1-42 are re-alleged and incorporated by reference as if fully set forth

herein.

54.     Defendant Duffield, by engaging in the conduct described above, knowingly and

substantially assisted Plandai's failure to file factually accurate and complete periodic reports

with the Commission in connection with the payments Plandai received for the issuance and sale

of Plandai stock to Investors A, B, and C.

55.     By reason of the foregoing, Defendant Duffield violated, and unless enjoined will

again violate, Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] by aiding and abetting

violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules

12b-20 and 13a-1 [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

## FIFTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Sections 13(b)(2)(A) and (B) of the Exchange Act

### (Against Duffield)

56.     Paragraphs 1-42 are re-alleged and incorporated by reference as if fully set forth herein.

57.     Defendant Duffield, by engaging in the conduct described above, knowingly and substantially assisted Plandai's failure to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

58.     Defendant Duffield, by engaging in the conduct described above, knowingly and substantially assisted Plandai's failure to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

59.     By reason of the foregoing, Defendant Duffield violated, and unless enjoined will again violate, Section 20(e) of the Exchange Act by aiding and abetting violations of Sections 13(b)(2)(A) and (B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and (B)].

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court enter a Final

Judgment:

**I.**

Finding that Defendants violated the provisions of the federal securities laws as alleged

herein;

**II.**

Permanently enjoining Plandai and its agents, servants, employees, and attorneys, and all

persons in active concert or participation with any of them who receive actual notice of the final

judgment by personal service or otherwise from future violations of Sections 5(a) and 5(c) of the

Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Sections 13(a) [15 U.S.C. § 78m(a)],

13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)] and 13(b)(2)(B) [15 U.S.C. § 78m(b)(2)(B)] of the

Exchange Act and Exchange Act Rules 12b-20 [17 C.F.R. § 240.12b-20] and 13a-1 [17 C.F.R. §

240.13a-1];

Permanently enjoining Duffield and his agents, servants, employees, and attorneys, and

all persons in active concert or participation with any of them who receive actual notice of the

final judgment by personal service or otherwise from future violations of Sections 5(a) and 5(c)

of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and from aiding and abetting violations

Sections 13(a) [15 U.S.C. § 78m(a)], 13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)] and 13(b)(2)(B)

[15 U.S.C. § 78m(b)(2)(B)] of the Exchange Act and Exchange Act Rules 12b-20 [17 C.F.R. §

240.12b-20] and 13a-1 [17 C.F.R. § 240.13a-1];

**III.**

Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act

[15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]; and

**IV.**

Granting any other and further relief this Court deems appropriate.


Dated: August 2, 2018

<div style="margin-left:40%">

/s/ John J. Bowers
John J. Bowers
Paul W. Kisslinger
100 F Street, N.E.
Washington, DC 20549-4473
Telephone: 202-551-4645 (Bowers)
              202-551-4427 (Kisslinger)
email:  *bowersj@sec.gov*
         *kisslingerp@sec.gov*

COUNSEL FOR PLAINTIFF SECURITIES
AND EXCHANGE COMMISSION

</div>